This court now resumes its session. Please be seated. Okay, we thank the advocates for their patience. And let's see, Stacy, do we have Judge Gilman? I'm here. I'm trying to figure out why I can't unlink my start video, but I see you. We can begin. I don't know if Kwame can help me there. Let's see, do we have Kwame or one of the IT people on? I'm here. There we are. I see you. I'm back.  The magician solved the problem. Like the view, Kwame, if you're listening, the view of the courtroom of Judge Miller and me is sort of blocking my view of Judge Gilman. Can that be moved? Let me see if I can get some help on that. I can't do that from here, but I can have John take a look at that. Okay. The next case to be argued is Cottrell v. AT&T Inc. And for the appellant, we have Mr. Evan Taker.  Yes, Your Honor. And for the appellee, Cottrell, we have Benjamin Gould. Yes, Your Honor. By the way, no relationship between me and Benjamin Gould. Yes, Your Honor. There might be a long lost relationship. Okay. I think, you know, Judge Gilman, can you move about three inches to your left? If you do that, I can see you perfectly. That would be good. Yeah, that's done. Kwame doesn't have to figure out a clever way to move that little box. Okay, so we'll proceed with the appellant's argument. This case is set for 15 minutes per side. And so if the AT&T appellants want to make a rebuttal argument, please stop before your total time is used up and save some. But if you go over, you'll get a pandemic bonus from me if you ask for more time. Okay, please proceed. Thank you, Your Honor. I will attempt to reserve three minutes for rebuttal. The court asked the parties to be prepared to discuss the California Court of Appeals decisions in Mejia and Maldonado. And I want to assure the court that I will be doing that throughout my remarks. As the court is aware, the district court alluded to two grounds for denying arbitration. The second of which was victim. But I'd like to start with the actual ground the court invoked, which is that Mr. is seeking a public injunction, thereby triggering the McGill rule. And the starting point for this issue is McGill itself. The California Supreme Court said in McGill that, quote, relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff. Or to a group of individuals similarly situated to the plaintiff does not constitute public injunctive relief. You'll find that at 393 P. Third and 90. That statement, along with the factual context in which McGill arose, alleged misrepresentations about a financial product gives rise to a clear and workable dividing line. If the alleged conduct affects members of the public before they become customers or employees of the defendant, such as deceptive advertising, the requested relief is a public injunction. But if the alleged conduct affects people only after they become customers or employees of the defendant. The relief would benefit only the plaintiff and similarly situated individuals and therefore is not a public injunction. I guess I don't see why that's either supported by the case law or particularly workable. And to take the last point, I mean, deceptive advertising doesn't actually you're not harmed just by seeing a deceptive advertisement. You're only harmed when you act in reliance on it and become a customer of the entity that was doing the deceptive advertising. So. So even under that standard, that doesn't seem to track the line that you're drawing. Well, I think it's not a question of, you know, is there a complete cause of action, including injury for the purposes of the public injunction or for the purposes of UCL and CLA? What you're trying to do is protect the members of the public from having this done to them. So the advertising affects them before they become customers or employees, I suppose. And therefore. It is in the public's interest to stop the wrongful advertising before anything happens as a result of the advertising. And I think from the Court of Appeal actually hew to this line pretty closely, as do the many district court cases we cited. So the key the four key Court of Appeal decisions are Clifford, Torresillas, Mejia and Aldonado, as the court recognized that the latter two. But let me start first with Clifford and Torresillas. Those in those cases, the plaintiffs sought injunctions against misclassification and related violations of the labor code under the UCL. But the Court of Appeal in both cases concluded that the injunctions would benefit only the plaintiffs and other employees of the defendants. And therefore, they were not public injunctions under McGill. And so I think those cases recognize that the distinction is because after all, anybody could be in the future an employee of those defendants. It wasn't enough that, you know, somebody in the public might someday be affected by this practice. The court was focused on the fact that the practice affected only existing employees of the two defendants. Now, in contrast, Mejia involved a plaintiff who sought an injunction requiring the defendant motorcycle dealership to make all of the required financial disclosures in a single document as required by California law. It is therefore the functional equivalent of the archetypal public injunction against false advertising that's involved in McGill because the disclosures sort of precede the customer relationship with the dealership. Why isn't the clearer line to draw between those sets of cases that on the one hand, a private injunction is one that benefits some fixed group of people? I mean, Taurasius actually said, you know, that it would benefit Taurasius himself and possibly the current employees. So you have this fixed defined group that includes the plaintiff on the one hand. And on the other hand, you know, anyone in the future who might become a customer, anyone in the future might become a customer, you know, of the motorcycle dealership or the auto loan or of AT&T. Why isn't that the line to draw from the cases? I'm stumped. I mean, I just I've thought of it in terms of the way I laid out. It seemed to me that that is the way the cases articulated it. I think if you start down the road of trying to decide, sort of, is it well defined? Is it not well defined? It gets a bit murky. I think it's a clearer line. If you just focus on when does the conduct affect the people, maybe you wind up basically the same place because the existing the existing non-existing distinction. I think that's basically what you are making is equivalent to saying, you know, the conduct is that is sought to be enjoined is happening to the plaintiff and similarly situated people. That's a defined group. As you see it, Judge Miller, in contrast, it's not, you know, it's not happening to the general public and therefore to that sort of more amorphous group. I guess what was tripping me up is we know that we know that false advertising and gill affects the more amorphous group. And that's the that's the sort of quintessential public injunction. But as I'm thinking it through, I think it is effectively the same dividing line. You wind up at the same place if the if the conduct is affecting the general public, then it is a public injunction. It's affecting, you know, the more defined group is a non-public injunction. I hope that's satisfying. I think it is. But then my question is, why do you fall on the private side of that? Because as I understand it, the requested relief here would cover future customers of AT&T. So you have somebody, you know, random Californian, not currently a customer of AT&T could become one and would then benefit from the requested relief. So why? Why does that? I think that's what that's the distinction we're trying to draw is that the conduct can't affect that person until they become a customer. AT&T cannot do what Mr. Cottrell alleges that does until someone is a customer and AT&T has the customer's payment information. So in that sense, it is similar to the Clifford and Tosias cases. You have to first be an employee before you can be misclassified, even though in theory, you know, everybody in in California could potentially be employed by those by those two companies. The court said that's effectively said that's not good enough. You have to be an existing. You know, the conduct is affecting only existing people. It's not you know, we're not going to broaden this out to the point where the distinction raised in McGill is basically meaningless. Everybody in the public, in some sense, can be said to be affected by any practice that is being sued over. So all of the effort that the California Supreme Court, you know, made to differentiate between public and nonpublic injunctions in McGill would be sort of pointless. If you could say, well, somebody might someday become a customer and affected by these by these practices or might someday become an employee and be subject to misclassification. You know, it strikes me as strange that you're saying that if the proof in the record shows that AT&T was wrongfully signing up customers, now you want an injunction to prevent that from ongoing for potential future customers. Are you saying you can't issue an injunction under those circumstances? You can. Well, barring the arbitration clause precludes the issuance of injunctions that go beyond the existing customer. So, you know, unless it's a unless it's a public injunction, you can't if the if the person is subject to an arbitration provision. But again, I would circle back to Clifford and Taurus. Yes, you could say the exact same thing that you just said, Judge Gilman, about the misclassification allegations. You know, shouldn't the individual be entitled to protect everybody who might be a future employee of those companies by getting an injunction against misclassification? And those cases say, no, that's not what we mean by a public injunction. And it would really just there would be nothing left, basically, of the McGill and Broughton and Cruz distinction if if that kind of broad approach were adopted. Well, but an existing practice of advertising for the public, like AT&T is alleged to have done, seems a little different than misclassifying actual employees. We're talking about consumers can be the general public. This is not a false advertising case. It's not about they don't allege you tell people you'll never be signed up unlawfully for a for a service you didn't order. There's no false advertising allegations. The allegation is somebody has been happily a customer for months, years, days, whatever. And then someday they contact you or or even if they don't contact you, you you put you put a new service on their account that they didn't ask for. That's all sort of internal facing. It's not public facing. It's not about telling people publicly that you're going to do something or not do something or misrepresenting the terms of a, you know, of an agreement offering you serious terms. All of those things are sort of public facing. And what's going on here are practices that are are private. They're private facing. They're facing existing customers and can't without the payment information. They can't be imposed on just anybody in the general public. I see that I'm running out of my time. I'm happy to address other questions or reserve a balance for rebuttal. That's fine. I have a question, but I'll give you two minutes for rebuttal, extending your time. But my question is this. Does the application of the McGill rule depend at all on the market share of the companies whose practices are challenged? I mean, AT&T is a very big company, but I don't think your customers are the general public, but they're a subset of that. So what is the percentage of the public that uses AT&T? And does that matter? Does the record show that? And is it relevant to this issue? Well, I would say it's not relevant to the issue. And, you know, the record I don't leave shows it. Obviously, we know that AT&T, Verizon, T-Mobile are all really big companies that have lots of subscribers. But I don't think that's what was going on in any of these cases. In fact, well, of course, this court is not bound by all of the district court cases we cited. Many of them involve very large companies, Wells Fargo, Citibank, JPMorgan Chase. So I don't think any of I don't think it matters. I think the point is that the distinction that I've been trying to draw between conduct that affects people while they are members of the public versus conduct that affects them after they become customers or employees of the defendant. Thank you, Your Honor. But you can, for planning purposes, plan to make rebuttal for two minutes, Max. Thank you. And I will turn to Mr. Gould for the appellees. Good morning. Counsel, you've got this set for 15 minutes because I'm giving your friend an extra two minutes. If you need two minutes more and ask for it, you'll get it, too. I appreciate that, Your Honor. Thank you. Good morning, and may it please the court. My name is Benjamin Gould, and I'm here to represent appellee David Cottrell. I want to proceed immediately, although I'm happy to answer any questions about the inseparability issue. I think this court can and should decide that this case is totally unconstitutional. I believe we want to proceed immediately to discuss the case. Mr. Gould, your sound, at least on my mic here, your sound is cutting in and out. Oh, I'm sorry. I'm going to take off my earphones, then, if that might be the issue I have. Is this any better, Your Honor? I can hear you now. The mic's directional, so make sure you're talking into the mic. Okay. Thank you. So Mejia and Maldonado, in our view, hold that public injunctive relief includes an injunction against a practice that is ongoing and may affect members of the public who are not now but may yet become customers of the defendant. And as I understand it, AT&T has really three arguments against that. The first is the public injunctive relief, to be public, requires that the practice may affect persons who are not yet customers of the defendant. The problem with that argument is that one could say exactly the same thing for Maldonado. A member of the public is not going to be affected by usurious interest rates on a loan unless the member of the public has been issued a loan by the defendant. You could also say the same thing for Blair. Blair was about rent-to-own contracts and their pricing structure. A member of the public isn't going to be affected by that until he or she enters into a rent-to-own contract with Rent-A-Center. The second argument that I think AT&T made in its briefing, not in its oral argument here, but in its briefing, is that public injunctive relief can't be public if it affects only a subset of customers. The reason I think that can't be true is that it's contrary both to the reasoning and to the facts of some of the controlling cases. For example, Mahia was about disclosures made in connection with financing sales of vehicles. The motorcycle dealership there argued, in fact, that this was directed at a narrow slice of customers because not everybody finances a purchase of a motorcycle. Well, the Mahia court rejected that argument. You can also look at the dicta in the Maldonado footnote, too, which I read as rejecting that argument as well. And fourth, also, for whatever it's worth, the court in December of last year in an unpublished decision called SNAR, S-N-A-R-R, also rejected that argument. And maybe most fundamentally, the distinction between all customers of a defendant and some subset of customers, whether a practice affects all or some, is a distinction that doesn't seem to have any basis in the actual rationale given by any of the published precedential decisions. Not in Blair either. And then third, and I think this actually might be their strongest argument. Their third argument is, well, what do you do with Clifford and Taurasius? Couldn't it be said that the injunctions sought there would affect members of the public who are not now but may yet become employees of the defendant? I think two things to say. One is just sort of realistically, it's hard to see how Mahia and Maldonado could have been decided the way they were if Taurasius and Clifford were on point for a case involving consumers. I think the larger point is that a practice that affects consumers rather than employees is far more likely to affect members of the public. A member of the public is far more likely to come into a retailer in a consumer role than the member of the public is going to come into contact with an employer in an employee-employer role. I also just think what's going on there is that the courts are saying something like, well, look, the UCL, CLRA, they're not primarily intended to protect employees. And if the purpose of the public injunctive relief under the UCL and CRA is to protect consumers, then an injunction that protects only potential future employees is not going to count. So that's my presentation on the public injunctive relief issue. Obviously, I'm happy to answer any questions the court may have about public injunctive relief or any other issue. Hearing none, I'm happy to rest my argument, and I appreciate the court's attention very much. Thank you, counsel. Now, we're permitting the appellee, I mean the appellant, time to make a rebuttal argument. So you've got two minutes. Thank you, Your Honor. I think the only point that I really need to respond to is Mr. Gould's discussion of Maldonado and Blair. I think they both involve the same kind of public facing conduct that we have been saying is where, you know, is what defines a public injunction. In Maldonado, the practice was offering the public loans at usurious interest rates. And so the public would benefit before anybody becomes a customer by having the defendant enjoined from offering usurious interest rates. And the same goes for Blair. It's a somewhat similar fact pattern. There, the allegation was that rent-a-center was violating the Carnet Act by offering rent-to-own prices and residual payment prices that were unlawful. And so the public would benefit by an injunction that says you can't do that. You can't tell the public in your public facing materials, marketing materials, advertising materials, these rates, they are unlawful. And so it affects people before they even, you know, pick up the phone or go on their computer or go into the store to deal with these, with the lenders or with rent-a-center. And so those cases, you know, we don't run afoul of those cases. As I said in my opening remarks, we're different. We're private facing. The conduct can't happen until someone becomes a customer. And I'm not aware of any case in which, certainly not any California appellate case, in which a court has held that conduct that affects only, that affects people only after they become customers or employees is a public injunction. So I don't think that those cases are inconsistent with Torsia and Clifford, and I don't think that they undermine our position. Thank you. Thank you, counsel. Unless there are further questions from Judge Miller or Judge Gillen, we'll submit this case. An hearing on the Cattrell v. AT&T case shall now be submitted, and the parties will hear from us in due course. But I again thank both of you for your excellent arguments and for helping us out remotely. So that shall be submitted. We have one more case on our docket, which is Al Hilo v. Garland. And that case is submitted, and that case number 270327 has been submitted on the briefs. So therefore, we've concluded the day's cases for this session, and the court will adjourn until tomorrow. All rise. This court for this session stands adjourned.
judges: Gilman, Gould, Miller